FILED

2017 SEP 14 AM 11:05

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

CANDY RAY,

    Plaintiff,

vs.

CASE NO. 5:17-cv-415-OC-30PRL

NPRTO FLORIDA, LLC
d/b/a PROGRESSIVE LEASING,

    Defendant.

_____/

## COMPLAINT
## JURY DEMAND

### INTRODUCTION

1. Plaintiff was besieged with *__hundreds__* of autodialed calls and prerecorded or artificial voice message calls (robocalls), sometimes *__five calls a day__*, to her cellular telephone by Defendant who was trying to collect a debt allegedly owed by her husband. Defendant ignored Plaintiff's repeated pleas to Defendant to stop calling, and persisted with its relentless campaign of telephonic harassment.

2. Robocalls are the #1 consumer complaint in America today, with more than 1.9 million complaints filed to the Federal Trade Commission in the first five months of 2017 alone.[1]

3. To protect consumers from the nuisance, invasion of privacy, cost, and inconvenience of autodialed calls and pre-recorded or artificial voice message calls ("robocalls"), Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), which forbids making non-emergency calls using an automatic telephone dialing system or an artificial or prerecorded voice message to a cellular telephone without the prior express consent of the called party.

4. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." Osorio v. State Farm Bank, F.S.B., 746 F. 3d 1242, 1256 (11th Cir. 2014). Despite the penalties put in place over 26 years ago, robocall abuse continues to skyrocket.

---

[1] *FTC Escalates the Fight against Illegal Robocalls Using Consumer Complaints to Aid Industry Call-Blocking Solutions*, FEDERAL TRADE COMMISSION (Aug. 1, 2017), https://www.ftc.gov/news-events/press-releases/2017/08/ftc-escalates-fight-against-illegal-robocalls-using-consumer.

5. Plaintiff alleges that Defendant's relentless call campaign violated both the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA") and the Telephone Consumer Protection Act, 42 U.S.C. § 227 *et seq.* ("TCPA").

## JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367(a) and 47 U.S.C. § 227(b)(3). See Mims v. Arrow Financial Services, LLC, 132 S. Ct. 740 (2012). Venue in this District is proper because Plaintiff resides here and Defendant placed telephone calls into this District.

## PARTIES

7. Plaintiff, Candy Ray ("Mrs. Ray") is a natural person and citizen of the State of Florida, residing in Citrus County in the Middle District of Florida.

8. Defendant, NPRTO Florida, LLC d/b/a Progressive Leasing ("Progressive") is a Utah company with its principal place of business in Draper, Utah.

9. Defendant is a "person" as that term is defined by Fla. Stat. § 1.01(3).

10. The FCCPA applies to any "person" collecting or attempting to collect a consumer debt. E.g., Gann v. BAC Home Loans Servicing LP, 145 So.

3d 906 (Fla. 2d DCA 2014); Schauer v. General Motors Acceptance Corp., 819 So. 2d 809, 811-12 (Fla. 4th DCA 2002).

## FACTUAL ALLEGATIONS

11. Defendant sought to collect from Plaintiff an alleged debt arising from a transaction in which the money, property, insurance, or services that are the subject of the transaction were incurred primarily for personal, family, or household purposes, hereinafter referred to as the "alleged debt."

12. On or about September 1, 2015, Mrs. Ray's husband purchased a bed using Defendant's Lease-to-Own program, which resulted in the alleged debt.

13. Mrs. Ray is not a co-signor or otherwise an obligor of the alleged debt.

14. Shortly after Mr. Ray purchased the bed, a billing dispute arose between Mr. Ray and Defendant with respect to the payment schedule, which resulted in a heated exchange between Mr. Ray and Defendant.

15. On or about October 2015, during a telephone conversation between Mr. Ray and Defendant, Mrs. Ray intervened and spoke with Defendant in an attempt to resolve the issue with Defendant on Mr. Ray's behalf.

16. Thereafter, even though she was not a signor on the contract and owed no money to Defendant, Defendant began a relentless campaign of placing

daily, repeated robocalls to Mrs. Ray's cellular telephone number in an attempt to collect the alleged debt owed by her husband.

17. Mrs. Ray's cellular telephone number is 352-███-1635.

18. Mrs. Ray is the regular, customary user and carrier of the cellular telephone number 352-███-1635.

19. Defendants intentionally harassed and abused Mrs. Ray on numerous occasions by calling her aforementioned cellular telephone number several times in one day, and on back to back days, with such frequency as can reasonably be expected to harass.

20. On multiple occasions during the following months, Mrs. Ray pled with Defendant to stop calling her.

21. On or about January 2016, Mrs. Ray answered a call from Defendant and informed Defendant that she had just gotten home from the hospital after having a heart attack and asked them if they were trying to kill her.

22. On or about January 2016, Mrs. Ray expressly revoked any express consent Defendant may have mistakenly believed it had to place robocalls to her aforementioned cellular telephone number.

23. On or about January 2016, Defendant indicated that it would not respect Mrs. Ray's stop call request.

24. On or about January 2016, Defendant laughed at Mrs. Ray when she told Defendant to stop calling.

25. Thereafter, Defendant continued its daily, repeated telephone calls to Mrs. Ray's aforementioned cellular telephone number.

26. On or about February 2016, Mrs. Ray answered a call from Defendant. During this telephone call, Mrs. Ray again informed Defendant that she was recovering from a heart attack, informed Defendant that she would not pay, and begged Defendant to stop calling.

27. On or about February 2016, Mrs. Ray answered a call from Defendant and informed Defendant she was going to hire a lawyer because Defendant would not stop harassing her.

28. On or about February 2016, Mrs. Ray again expressly revoked any express consent Defendant may have mistakenly believed it had to place robocalls to her aforementioned cellular telephone number.

29. On or about February 2016, Defendant ignored Mrs. Ray's refusal to pay insisting that she needed to pay the alleged debt.

30. On or about February 2016, Defendant indicated that it would not respect Mrs. Ray's stop call request.

31. On or about February 2016, Defendant laughed at Mrs. Ray when she told Defendant to stop calling.

32. Thereafter, Defendant continued its daily, repeated telephone calls to Mrs. Ray's aforementioned cellular telephone number.

33. From March 23, 2016 to October 14, 2016, Defendant used an automatic telephone dialing system or a pre-recorded or artificial voice to place ***hundreds*** of telephone calls to Mrs. Ray's aforementioned cellular telephone number.

34. On many occasions, Defendant placed more than one (1) robocall per day to Mrs. Ray's aforementioned cellular telephone number.

35. On numerous occasions, Defendant placed up to three (3) robocalls per day to Mrs. Ray's aforementioned cellular telephone number.

36. By way of example on April 13, 2016, Defendant left the following pre-recorded voicemail message on Mrs. Ray's aforementioned cellular telephone three (3) times at 2:14 PM, 4:38 PM, and 7:10 PM: "This is an important message from Progressive Finance. Please call us immediately at 866-389-0002."

37. On multiple occasions, Defendant placed four (4) robocalls per day to Mrs. Ray's aforementioned cellular telephone number.

38. By way of example, on June 24, 2016, Defendant left the following pre-recorded voicemail message on Mrs. Ray's aforementioned cellular telephone number (4) times at 10:52 AM, 2:07 PM, 4:08 PM and 7:59 PM: "This is an

important message from Progressive Finance. Please call us immediately at 866-389-0002."

39.    On multiple occasions, Defendant placed five (5) robocalls per day to Mrs. Ray's aforementioned cellular telephone number.

40.    By way of example, on September 16, 2016, Defendant left the following pre-recorded voicemail message on Mrs. Ray's aforementioned cellular telephone number (5) times at 8:35 AM, 10:40 AM, 1:08 AM, 4:36 PM, and 7:00 PM: "This is an important message from Progressive Finance. Please call us immediately at 866-389-0002."

41.    Defendant called Mrs. Ray from many different telephone numbers, including, but not limited to, 207-480-3989, 256-660-3802, 302-257-3474, 402-470-8201, 443-214-7432, 484-273-3985, 603-263-8771, 619-610-7983, 702-829-3546, 703-574-9805, 859-687-7561 and 860-706-1555.

42.    Because Defendant called from so many different numbers, Mrs. Ray never knew if it was safe to answer her telephone.

43.    Upon information and belief, Defendant placed the telephone calls from the different telephone numbers in order to trick Mrs. Ray into answering Defendant's telephone call.

44. Due the volume of the calls and because Defendant transmitted the deceptive caller ID information, Mrs. Ray was not able to document every call Defendant placed to her cellular telephone.

45. Defendant's records will show the exact number of calls Defendant placed to Mrs. Ray's cellular telephone using an automatic telephone dialing system or a pre-recorded or artificial voice within four years of this Complaint.

46. As a result of Defendant's unlawful, abusive, and intrusive conduct Plaintiff suffered physical and emotional injury, including emotional distress.

47. As a result of Defendant's relentless telephone call campaign, Defendant caused Plaintiff actual harm, not only because Plaintiff was subjected to the aggravation that necessarily accompanies these calls, but also because the calls used Mrs. Ray's allotted cellular minutes, diminished her cellular battery life, and wasted her data storage capacity.

48. Defendant has numerous other federal lawsuits pending against it alleging it continued to robocall consumers after the consumer asked them to quit calling.

49. Defendant knows it is not permitted to place telephone calls to cellular telephones using an automatic telephone dialing system or a pre-recorded or artificial voice without the prior express consent of the called party.

50. None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. § 227 (b)(1)(A).

51. Defendant's actions were willful.

52. Defendant willfully or knowingly violated the TCPA.

## COUNT I
## HARASSMENT AND ABUSE
## IN VIOLATION OF THE FCCPA, FLA. STAT. § 559.72(7)

53. Plaintiff incorporates Paragraphs 1 through 52 above as if fully set forth herein.

54. Defendant willfully engaged in conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family in violation of Fla. Stat. § 559.72(7).

**WHEREFORE**, Plaintiff requests that the Court enter judgment in favor of Plaintiffs and against Defendant for:

    a. Damages;

    b. Attorney's fees, litigation expenses and costs of suit; and

    c. Such other or further relief as the Court deems proper.

## COUNT II
## WILLFUL TELEPHONIC HARASSMENT AND ABUSE BY FREQUENT CALLING IN VIOLATION OF THE FCCPA, FLA. STAT. § 559.72(7)

55. Plaintiff incorporates Paragraphs 1 through 52 above as if fully set forth herein.

56. Defendant willfully communicated with the debtor or any member of her or his family such frequency as can be reasonably expected to harass the debtor or her or his family in violation of Fla. Stat. § 559.72(7).

**WHEREFORE**, Plaintiff requests that the Court enter judgment in favor of Plaintiffs and against Defendant for:

    a. Damages;

    b. Attorney's fees, litigation expenses and costs of suit; and

    c. Such other or further relief as the Court deems proper.

## COUNT III
## AUTOMATED OR PRE-RECORDED CALLS TO PLAINTIFF'S CELLULAR TELEPHONE IN VIOLATION OF THE TCPA, 47 U.S.C. § 227 (b)(1)(A)(iii)

57. Plaintiff incorporates Paragraphs 1 through 52 above as if fully set forth herein.

58. Defendant placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or pre-recorded or artificial voice in violation of 47 U.S.C. § 227 (b)(1)(A)(iii).

**WHEREFORE**, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Defendant for:

    a. Damages;

    b. A declaration that Defendant's debt collection practices violate the TCPA;

c. A permanent injunction prohibiting Defendant from placing non-emergency calls to the cellular telephone of Plaintiff using an automatic telephone dialing system or pre-recorded or artificial voice of the called party; and engaging in the complained of practices; and

d. Such other or further relief as the Court deems proper.

## JURY DEMAND

Plaintiff demands trial by jury.

/s/ *James S. Giardina*
[ X ] James S. Giardina – Trial Counsel
Fla. Bar No. 0942421
[ ] Kimberly H. Wochholz
Fla. Bar No. 0092159
The Consumer Rights Law Group, PLLC
3104 W. Waters Avenue, Suite 200
Tampa, Florida 33614-2877
Tel: (813) 435-5055 ext 101
Fax: (866) 535-7199
James@ConsumerRightsLawGroup.com
Kim@ConsumerRightsLawGroup.com
*Counsel for Plaintiff*

[ ]Richard K. Peck, Esq.
Fla. Bar No. 47105
Elkin-Peck, PLLC
12515 Spring Hill Dr.
Spring Hill, FL 34609
352-835-7977
Attorneys for Plaintiff
service@elkinpeck.com
litigation@elkinpeck.com
*Counsel for Plaintiff*